Baldwin *et al. v.* The State.

Filed Nov. 13, 1890.

---

No. 15,549.

BALDWIN ET AL. *v.* THE STATE.

CONTEMPT.—*Disobedience of Subpœna Requiring Attendance of Witness Before Grand Jury.—Attachment.— Recognizance.—Action Upon.— Continuance.— Overruling Motion For.*—Where an action upon a recognizance given by one under arrest upon an attachment for contempt was commenced in the April term of the Grant Circuit Court, and before the close of the term the defendants appeared and the cause was continued; and there-

Baldwin *et al. v.* The State.

after, at the September term, they moved for a stay of proceedings in order to make an application to the Blackford Circuit Court, in which the entry of forfeiture was made, to set aside such entry, such motion was properly overruled. The Supreme Court will take judicial notice of the fact that there was an intervening term of the Blackford Circuit Court between the April and September terms of the Grant Circuit Court, and the defendants, had they been diligent, might have made their application to that court, and had a hearing before the commencement of the term of the Grant Circuit Court, at which they made their motion.

SAME.—*Recognizance.—Entry of Forfeiture.—Condition Precedent to Suit.— Defence.*—While such entry of forfeiture was a condition precedent to a suit upon the recognizance by the State, it was not a hindrance to a complete defence by the defendants, if for any reason they were not liable.

SAME.—*Witnesses Before Grand Jury.—Authority of Clerk to Issue Subpœnas For.—Statute.*—While there is no statute which, in express language, directs the clerk of the court to issue subpœnas for witnesses to appear before the grand jury, by implication from sections 1797, 1858, 1682, 1671, 1785, 1417, 1664, and 5854, R. S. 1881, the authority clearly appears, and the court may punish for contempt one who disobeys such subpœna.

SAME.—*Proceedings for.—Section 1013, R. S. 1881, Regulating.*—Section 1013, R. S. 1881, regulating proceedings for contempt, has no application to an attachment for contempt of one who disobeys a subpœna commanding him to appear before the grand jury as a witness. Section 1014 expressly excepts witnesses subpœnaed to testify in any case, civil or criminal.

SAME.—*Attachment.—Authority of Sheriff to Take Recognizance.*—Section 1705, R. S. 1881, confers upon the officer authorized to execute a warrant in a criminal case the authority to take the recognizance of the person named in the warrant. An attachment for contempt is a warrant in a criminal action, within the meaning of said section, and the sheriff has authority to execute it, and accept bail in the sum fixed by statute.

From the Grant Circuit Court.

*G. W. Steele* and *J. A. Kersey*, for appellants.

*L. T. Michener*, Attorney General, and *J. H. Gillett*, for the State.

BERKSHIRE, C. J.—This action has for its foundation a recognizance executed by the appellants to the appellee to secure Baldwin's attendance in the Blackford Circuit Court to answer for contempt. The circumstances, in brief, are as follows :

Baldwin had been subpœnaed to appear as a witness before the grand jury of the Blackford Circuit Court, at its March term, 1888; he failed to appear; the court ordered an attachment, and fixed the bail at $100. The writ was issued, directed to the sheriff of Grant county, who executed it and approved the recognizance sued upon. Baldwin failing to appear in answer to said charge, in accordance with the conditions of the recognizance he was called, and defaulted, and the fact entered of record. Section 1721, R. S. 1881.

This action was commenced in the April term, 1888, of the Grant Circuit Court, and before the close of the term the appellants appeared and submitted to a rule to answer, and the cause was continued. Thereafter, and at the September term of the court, they moved the court for a stay of proceedings, that they might go into the Blackford Circuit Court and make an application to set aside the entry declaring a forfeiture of the recognizance. This motion the court overruled, and the appellants saved an exception.

After the court had refused the motion to stay proceedings, the appellants filed a plea in abatement; this plea was challenged by a demurrer, which the court sustained, and the appellants saved an exception.

Thereafter the appellants filed an answer in bar; to this answer the appellee addressed a demurrer, which the court sustained, and an exception was saved; the appellants then filed an additional answer, to which a demurrer was submitted and sustained, and they excepted.

Upon appellants refusal to answer further, the court rendered judgment, for want of an answer, for the amount named in the recognizance.

The errors assigned are: The court erred in overruling the motion to stay proceedings; in sustaining the demurrer to the plea in abatement; the complaint does not state facts sufficient to constitute a cause of action; the court erred in

sustaining the demurrer to the original answer, and in sustaining the demurrer to the additional answer.

The motion to stay proceedings was properly overruled. The facts upon which the motion rested entitled the appellants to no such relief. Had the appellants been at all diligent they would have known of the disposition that had been made of the proceedings for contempt in time to have made their application to the Blackford Circuit Court, and had a hearing before the commencement of the term of the Grant Circuit Court at which they made their motion. This court will take judicial notice of the fact that there was an intervening term of the Blackford Circuit Court between the April and September terms of the Grant Circuit Court. But the entry of forfeiture did not conclude the appellants from making any defence to this action which they would otherwise have had. The entry was a condition precedent to a maintenance of the action by the State, but it was in no way a hindrance to a complete defence by the appellants, if for any reason they were not liable.

The cause was afterwards continued, with a rule to answer standing against the appellants, and in the meantime, as their answer thereafter filed discloses, they presented their application to the Blackford Circuit Court, obtained a hearing and an adverse ruling ; this being true, the appellants were not injured by the ruling of the court if it had been erroneous. The answer in abatement was clearly bad. There was nothing stated in it tending to show cause for an abatement of the action ; the facts pleaded, so far as material, went to the merits of the action and not to its abatement. But after the hearing in the Blackford Circuit Court there was nothing left for the plea in abatement to rest upon ; the appellants were, therefore, in no way injured by the ruling of the court had the plea in abatement been good.

There was no demurrer addressed to the complaint, but if there had been our conclusion as to its sufficiency would

not be different. We think the complaint states a good cause of action.

The subpœna was personally served on Baldwin, and his failure to appear before the grand jury as commanded was contempt, for which the court had power to summarily punish him, except he purged himself thereof. This he could do when the time came to answer by appearing and offering to the court some reasonable excuse for his failure to obey the command of the writ.

The appellants insist that the subpœna was not a legal process, and hence Baldwin was not bound to obey it. It is contended that there is no authority given by statute for a subpœna to issue for witnesses to appear before the grand jury. And it is probably true that there is no statute which in express language directs the clerk of the court to issue subpœnas for witnesses to appear before the grand jury, but we think the authority clearly appears by implication. The same may be said as to witnesses required to appear at the trial of a criminal prosecution.

Section 1797 provides that witnesses on behalf of the State or defendant, in criminal prosecutions, may be compelled to attend and give testimony in open court.

Section 1858 declares that the defendant, in case of a conviction, shall not be taxed with costs for the mileage or attendance of witnesses summoned by the State whose names were not endorsed on the indictment or information.

Section 1682 empowers the sheriff to execute warrants and serve subpœnas.

Section 1671 requires that the names of all the material witnesses must be endorsed on the indictment, but that other witnesses may afterwards be subpœnaed by the State.

Section 1785 gives to the accused, in a criminal case, the right to have compulsory process for obtaining his witnesses.

Section 1417 authorizes the courts to make allowances for necessary expenditures incurred under their order to women,

children, or aged, infirm, or poor persons summoned as witnesses in State prosecutions.

Section 1664 gives authority to compel the attendance of witnesses before the grand jury.

In view of these several provisions it can hardly be claimed that the clerk of the circuit court, whose duty it is to issue all processes for the court, is not authorized to issue subpœnas to be served upon witnesses in criminal cases in the absence of an express statute conferring such authority. Such a holding by this court would be in opposition to the evident intention of the Legislature, the long-continued practice to the contrary, and would go very far to obstruct a proper enforcement of the law against those who violate it.

When we consider the criminal code as an entirety, and look at the statutes regulating the duties of clerks of the circuit and criminal courts, we have no difficulty in reaching a conclusion as to what is the proper process to secure the presence of witnesses in all kinds of criminal proceedings, and by whoever issued.

We are forced to the conclusion that the proper process for witnesses in all cases is a subpœna issued by the clerk. It is conceded that this is true as to witnesses whose attendance is required upon the trial in court. We can imagine no good reason for a different practice as to witnesses whose attendance is required before the grand jury, and none has been suggested.

Section 1417, cited above, is none the less applicable to witnesses summoned to appear before the grand jury than before the court, and has been universally construed as alike applicable. But it is not improper to consider the provisions in the civil code in giving construction to the provisions found in the criminal procedure act, and when we do this we find that a subpœna is the proper process and the only one recognized for summoning witnesses to testify in any matter where the testimony of a witness is required. But if there was otherwise any doubt as to the correctness

of our conclusion there is still one other statute which seems to settle the question beyond controversy. We refer to section 5854, R. S. 1881, fixing the fees of the clerk, which reads, so far as material to the question under consideration, as follows : " For issuing and filing each subpœna for the grand jury, including all witnesses called for at one time, eight cents (to be paid out of the county treasury, upon the order of the judge of the court having criminal jurisdiction)." But it is contended further that the appellant Baldwin was at most only guilty of an indirect contempt, as provided in section 1007, R. S. 1881, and could only be proceeded against as provided in section 1013, and that the complaint is bad because it fails to show a state of facts bringing the case within the last named section. We can not agree with this contention. Section 1014, which is a part of the same act, expressly excepts witnesses subpœnaed to testify in any case in court, civil or criminal.

Section 2036 makes it a criminal offence for any person to disobey a subpœna or citation, but expressly provides that the creation of the offence shall not prevent summary proceedings for contempt.

Section 1322, which is a later act than sections 1007 and 1013, *supra,* expressly provides that the circuit courts shall have full authority to punish by fine and imprisonment, or either, all contempts of their authority and process, in any matter before them, or by which the proceedings of the courts or the due course of justice are interrupted.

We think it very clear that the Legislature has not abridged, or attempted so to do, the power of the courts to summarily punish as for contempt persons who have disobeyed its process by failing to appear as witnesses either in court or before the grand jury. The power of the courts to punish for contempt those who disobey their process is an inherent power and one which can not be taken away or abridged except by organic law.

In *Williamson's Case* there had been a conviction for con-

Baldwin *et al. v.* The State.

tempt in one of the United States District Courts. He brought a *habeas corpus* proceeding to the Supreme Court of Pennsylvania. The opinion was delivered by BLACK, J. It is able and exhaustive. The case will be found reported in 26 Pa. St. 9, and 67 Am. Dec. 378. On page 380 it is said, speaking of the petitioner: " What is he detained for? The answer is easy and simple. The commitment shows that he was tried, found guilty, and sentenced for contempt of court, and nothing else. He is now confined in execution of that sentence, and for no other cause. This was a distinct and substantive offence against the authority and government of the United States. Does anybody doubt the jurisdiction of the district court to punish contempt? Certainly not. All courts have this power, and must necessarily have it; otherwise they could not protect themselves from insult, or enforce obedience to their process. Without it they would be utterly powerless." See *Ex parte Kearney,* 7 Wheaton, 38; 3 Am. & Eng. Encyc. of Law, 780, and authorities cited; *Hawkins* v. *State,* 125 Ind. 570. Section 1705, R. S. 1881, confers upon the officer authorized to execute a warrant in a criminal case the authority to take the recognizance of the person named in the warrant. The attachment in the hands of the sheriff of Grant county was a warrant in a criminal action, and the sheriff had authority to execute it and accept bail in the sum as fixed by the court.

That a proceeding for contempt, because of the disobedience of the process of the court, is a criminal proceeding, and, therefore, bailable, there can be no question. All violations of the criminal statutes, except murder and treason, are bailable under our Constitution and laws. Section 17, Bill of Rights, State Constitution.

In *New Orleans* v. *Steamship Co.,* 20 Wall. 387, the court said: " Contempt of court is a specific criminal offence. The imposition of the fine was a judgment in a criminal case. That part of the decree is as distinct from the residue as if it were a judgment upon an indictment for perjury com-

mitted in a deposition read at the hearing. This court can take cognizance of a criminal case only upon a certificate of division in opinion." *Williamson's Case, supra; Ex parte Kearney, supra; Fischer* v. *Hayes,* 6 Fed. Rep. 63; 3 Am. & Eng. Encyc. of Law, 796; 5 Crim. L. Mag. 171.

We find no infirmity in the complaint.

The original answer is substantially the same as the additional paragraph, and if one is bad the other is necessarily so.

There is an absence of any averment that Baldwin at any time presented himself to the Blackford Circuit Court in answer to the proceedings in attachment, and for some unaccountable reason it does not appear that Overman ever offered to surrender his principal upon a bail-piece in discharge of his liability. The paragraphs of answer are bad for these if for no other reasons.

We find no error in the record.

Judgment affirmed, with costs.

Filed Nov. 13, 1890.