141 F.3d 1179
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Phyllis TOKERUD, in her capacity as Executor of the Will and
Estate of Lloyd Tokerud, and Phyllis Tokerud, in
her personal capacity, Plaintiffs-Appellants,
v.
PACIFIC GAS AND ELECTRIC CO., General Electric Co., Bechtel
Corp., Electric Power Research Institute, Inc., Westinghouse
Electric Corp., Empire State Atomic Development Associates,
Inc., Consolidated Edison Company of New York, Inc., Central
Hudson Gas and Electric Corp., Long Island Lighting Co., New
York State Electric and Gas Corp., Niagara Mohawk Power
Corp., Orange and Rockland Utilities, Inc., Rochester Gas &
Electric Corp., Defendants-Appellees.
 Nos. 96-16629, 96-16631.
D.C. No. CV-94-01230-CW.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted December 4, 1997.
Decided April 8, 1998.
 
 Appeal from the United States District Court for the Northern District of California Claudia Wilken, District Judge, Presiding.
 Before FERGUSON, THOMPSON, and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The facts are known to the parties[1] and we shall not repeat them here.[2]
 
 
 3
 * The district court held that because Lloyd had entered into a cash settlement with and release of General Electric Company ("GE") concerning his workers' compensation claims, GE is shielded from tort liability--as to both Lloyd's and Phyllis's legal claims--by California's workers' compensation exclusivity principle. We agree. Section 3602(a) of the California Labor Code unambiguously provides that except in limited circumstances (none of which is applicable here), workers' compensation is the "sole and exclusive remedy of the employee or his or her dependents against the employer" for injuries arising out of industrial accidents. Cal. Labor Code § 3602(a). The only issue in this case is whether § 3602(a) applies to the Tokeruds' claims. The California courts have concluded that § 3602(a) applies only to actions in which the "events giving rise" to them occurred after the January 1, 1983 effective date of the amendment. Perry v. Heavenly Valley, 163 Cal.App.3d 495, 209 Cal.Rptr. 771, 777 (Cal.Ct.App.1985). The lineage of the Perry rule makes clear that the "event giving rise" to a cause of action, for purposes of the applicability of § 3602(a), is the accrual--as that term is used in the context of statute-of-limitations questions--of the cause of action itself. See Perry, 209 Cal.Rptr. at 777 (citing Fosgate v. Gonzales, 107 Cal.App.3d 951, 166 Cal.Rptr. 233 (Cal.Ct.App.1980) (citing Dillon v. Board of Pension Commrs., 18 Cal.2d 427, 116 P.2d 37 (Cal.1941), and Los Angeles County v. Metropolitan Cas. Ins. Co., 135 Cal.App. 26, 26 P.2d 699 (Cal.Ct.App.1933), overruled by People v. United Bonding Ins. Co., 5 Cal.3d 898, 98 Cal.Rptr. 57, 489 P.2d 1385 (Cal.1971))).
 
 
 4
 Pursuant to California's "discovery rule," a cause of action accrues, and the statute of limitations begins to run, "when the plaintiff suspects or should suspect that [his] injury was caused by wrongdoing, that someone has done something wrong to [him]." Jolly v. Eli Lilly & Co., 44 Cal.3d 1103, 245 Cal.Rptr. 658, 662, 751 P.2d 923 (Cal.1988). Because Lloyd candidly admitted that following his diagnosis in 1990, he "suspected that [his] cancer may have been caused by [his] exposure to radiation while working at [the GE facility]," the post-1982 version of § 3602(a) applies to his action, and shields GE from civil tort liability.[3] The district court was therefore correct to grant summary judgment to GE on all claims.
 
 II
 
 5
 The district court also concluded that the non-employer defendants were entitled to summary judgment on Lloyd's and Phyllis's claims on the ground that the applicable one-year statute of limitations, see Cal.Code Civ.Proc. § 340(3), had expired. We agree with the district court as to Lloyd's personal injury claim, but we disagree as to Phyllis's loss of consortium claim.
 
 
 6
 * Lloyd nowhere disputes that the one-year statute began to run on his personal injury claim several years before he filed suit. Nor could he, in light of his admission that he suspected as early as 1990 that his cancer had been caused by radiation exposure at the GE reactor. Rather, Lloyd contends that the statute was equitably tolled during the time that he pursued workers' compensation remedies against GE.
 
 
 7
 In order for equitable tolling to apply under California law, three "core elements" must be satisfied: "(1) timely notice to the defendant in filing the first claim; (2) lack of prejudice to the defendant in gathering evidence to defend against the second claim; and (3) good faith and reasonable conduct by the plaintiff in filing the second claim." Collier v. City of Pasadena, 142 Cal.App.3d 917, 191 Cal.Rptr. 681, 685 (Cal.Ct.App.1983). With regard to the "timely notice" element, the court in Collier noted that
 
 
 8
 a workers' compensation claim equitably tolls a personal injury action against that same employer for injuries sustained in the same incident. But under ordinary circumstances that workers' compensation claim would not equitably toll a personal injury action against a third party who might also be liable for the injury.
 
 
 9
 Id. (emphasis added). In order to "overlook [a party's] nominal absence" from the first proceeding, it is necessary that it be in "evidentiary privity" with the defendant that was formally named in the first suit. Cervantes v. City of San Diego, 5 F.3d 1273, 1276 n. 3 (9th Cir.1993). The requisite "evidentiary privity" simply is not present in this case. The Tokeruds suggest that because all defendants were represented in the district court by the same attorneys, the non-employer defendants had access to the evidence necessary to prepare their defense. The fact that the non-employer defendants were, in 1994, represented by GE-related counsel, however, could not and did not serve to put the non-employer defendants on notice, in 1990, of the possibility of being sued, as is required by the law of equitable tolling. Consequently, we hold that the district court was correct to grant the non-employer defendants summary judgment as to Lloyd's personal injury claim.
 
 B
 
 10
 We reach a different conclusion as to Phyllis's loss of consortium claim. Phyllis stated in her declaration that it was her "best belief" that her consortium "was not reduced to any extent until sometime during the late spring of 1993." Consequently, she argued, the statute did not begin to run until that time, and thus did not bar her loss of consortium claim. The district court disagreed. The district court pointed out that in 1990 and 1991 Lloyd underwent four surgeries and chemotherapy and radiation treatment, and that in January 1991 Phyllis had contacted a hospital in search of a "support group" for herself.[4] The district court therefore concluded that there was no genuine factual dispute that Phyllis's loss of consortium claim arose in 1991, and not in 1993 as she had claimed, and was thus barred by the one-year statute of limitations.
 
 
 11
 It is true, as defendants have argued, that the concept of "consortium" is drawn quite broadly under California law to include such elements as love, companionship, affection, society, sexual relations, solace, comfort, moral support, and emotional strength. See Rodriguez v. Bethlehem Steel Corp., 12 Cal.3d 382, 115 Cal.Rptr. 765, 780, 525 P.2d 669 (Cal.1974). It is also true, as defendants have argued, that a cause of action for loss of consortium accrues, and the statute commences, not when a spouse's consortium is completely obliterated, but rather when it is "to some extent reduced." Uram v. Abex Corp., 217 Cal.App.3d 1425, 266 Cal.Rptr. 695, 703 (Cal.Ct.App.1990). Despite these realities, we believe that, without the benefit of discovery providing any insight into the nature of the Tokeruds' marital relationship, the district court acted too hastily in rejecting Phyllis's asserted 1993 accrual date and granting summary judgment to the non-employer defendants on the loss of consortium claim.
 
 
 12
 Viewing the evidence in the light most favorable to Phyllis and drawing all reasonable inferences in her favor, as we must on summary judgment review, we do not think it "inconceivable," as the district court did, that Phyllis's consortium was not adversely impacted until 1993. Although it did not spell out precisely what part of Phyllis's consortium it thought had been impaired prior to 1993, perhaps the district court concluded that the four surgeries and postoperative treatments would necessarily have affected the Tokeruds' sex life. Then again, we have no evidence on sexual history. Perhaps the district court concluded that the surgeries and treatments would have necessarily prevented Lloyd from helping out around the house. But we have no evidence whether Lloyd really pitched in to perform household chores. The point, we think, is that without some evidence indicating the nature of the Tokeruds' relationship, we really cannot know what "consortium" entailed within the context of their marriage. And without knowing what consortium entailed within the context of the Tokeruds' marriage, we cannot know whether or not there was any loss of that consortium prior to 1993. The fact that Rodriguez-defined consortium is quite broad does not mean that all married couples enjoy every element of that consortium all of the time. It is at least possible that Phyllis is correct--maybe the only elements of her "consortium" impaired by the events of 1990 and 1991 were elements that the Tokeruds had never really enjoyed at all (or at least had not enjoyed in recent years). At this early stage of the proceedings, we simply have no way of knowing.
 
 
 13
 We certainly do not mean to suggest that the accrual date on a loss of consortium claim is inherently a function of the subjective opinion of the spouse-plaintiff. In fact, under California's "discovery rule," accrual dates are generally governed by an objective standard. See Jolly, 245 Cal.Rptr. at 662, 751 P.2d 923 ("[T]he limitations period begins once the plaintiff 'has notice or information of circumstances to put a reasonable person on inquiry....' ") (quoting Gutierrez v. Mofid, 39 Cal.3d 892, 218 Cal.Rptr. 313, 315, 705 P.2d 886 (Cal.1985) (quoting Sanchez v. South Hoover Hosp., 18 Cal.3d 93, 132 Cal.Rptr. 657, 663, 553 P.2d 1129 (Cal.1976)) (internal quotation marks omitted). We merely hold that, on the facts of this case, there is insufficient evidence in the record from which the district court could have concluded, as a matter of law, that Phyllis must have discovered a loss of consortium claim prior to 1993. Discovery may well bear out the district court's initial impulse that Phyllis's loss of consortium claim arose in 1991 or before. But we believe that that discovery should at least take place. Consequently, we reverse the district court's grant of summary judgment to the non-employer defendants on Phyllis's loss of consortium claim, and remand that claim to the district court for proceedings consistent with this opinion.
 
 III
 
 14
 The district court was correct to grant summary judgment to GE on all claims and to the non-employer defendants on Lloyd's personal injury claims. It erred, however, in concluding that no genuine issue of material fact existed as to the accrual date of Phyllis's loss of consortium claim.
 
 
 15
 AFFIRMED IN PART AND REVERSED AND REMANDED IN PART. Each party to bear its own costs.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 During the pendency of this litigation, Lloyd passed away. Phyllis was named executor to his estate, and has carried his personal injury claims forward on his estate's behalf. In order to minimize confusion, however, we refer to the personal injury claims as his
 
 
 [2]
 As an initial matter, we reject the Tokeruds' contention that the district court erred in permitting removal of their action to federal court because "[w]here only one person is affected by a nuclear accident or where all claims are filed in a single state court ... concurrent state court jurisdiction exists such that resolution of the action is proper in state court and will be most efficiently resolved without removal." Appellants' Opening Brief at 11-12. The plain language of the Price-Anderson Act provides quite explicitly for the removal of the Tokeruds' action. Section 2210(n)(2) provides for removal jurisdiction over "any public liability action arising out of or resulting from a nuclear incident.... " 42 U.S.C. § 2210(n)(2) (emphasis added). The Act goes on to define "nuclear incident" as "% occurrence, including an extraordinary nuclear occurrence, within the United States causing ... bodily injury, sickness, disease, or death...." 42 U.S.C. § 2014(q) (emphasis added). Similarly, it defines "public liability" as " any legal liability arising out of or resulting from a nuclear incident," and "public liability action" as " any suit asserting public liability." 42 U.S.C. §§ 2014(w), (hh) (emphasis added)
 The statute's express language--which provides for the removal of "any suit" arising out of "any occurrence" that gives rise to "any legal liability"--is determinative of the Tokerud's anti-removal argument. There simply is no requirement anywhere in the statute that there be more than one plaintiff in order to trigger the right of removal.
 
 
 [3]
 Because Lloyd's personal injury claim is barred by the exclusivity principle, so too is Phyllis's loss of consortium claim. See Cole v. Fair Oaks Fire Protection Dist., 43 Cal.3d 148, 233 Cal.Rptr. 308, 317, 729 P.2d 743 (Cal.1987)
 
 
 [4]
 We reject Phyllis's hearsay challenge to the district court's consideration of the nurse's transcription of the phone conversation in which Phyllis allegedly requested the support group. The transcription, which was included as an addendum to the declaration of Ned Isokawa, read: "Called by Mrs. Tokerud re care of her husband and requesting support group for herself." Phyllis's hearsay argument falters for two reasons. First, she failed properly to object to the admission of the evidence in the district court, and has therefore waived any objection on appeal. Allen v. Scribner, 812 F.2d 426, 435 n. 18 (9th Cir.), modified, 828 F.2d 1445 (9th Cir.1987) ("If a party fails to move to strike an affidavit that is allegedly defective under Rule 56(e), [she] waives any objection to it."). Second, even were we to assume that the objection was preserved for appeal, the objection lacks merit. Phyllis's statement itself constituted an admission of a party-opponent, and is thus admissible under Federal Rule of Evidence 801(d)(2)(A), and the nurse's transcription of Phyllis's statement constituted a business record--properly accompanied by the custodian's affidavit--and is thus admissible under Rule 803(6)