**TRAVELERS' INS. CO. v. BANCROFT et al.**

**No. 709.**

Circuit Court of Appeals, Tenth Circuit.

July 7, 1933.

Rehearing Denied Aug. 11, 1933.

Richard K. Bridges, of Tulsa, Okl. (Randolph, Haver, Shirk & Bridges, of Tulsa, Okl., on the brief), for appellant.

Park Wyatt, of Shawnee, Okl. (Byron Lamun, of Shawnee, Okl., on the brief), for appellees.

Before COTTERAL and McDERMOTT, Circuit Judges, and JOHNSON, District Judge.

JOHNSON, District Judge.

On February 23, 1922, the Travelers' Life Insurance Company issued a life insurance policy for $5,000 to Allen C. Bancroft payable to the executors, administrators, or assigns of the insured; his daughters Alleen and Alice were later substituted as beneficiaries. On July 24, 1922, the Travelers' Life Insurance Company issued a second life insurance policy to Allen C. Bancroft for $5,000 payable to the executors, administrators, or assigns of the insured. On December 1, 1930, Alleen Bancroft being then nineteen years of age, and Alice Bancroft being then fourteen years of age, by her next friend Mrs. J. E. Cullum, commenced an action in the state court of Oklahoma to recover upon the policy dated February 23, 1922, in which they were named as beneficiaries. At the same time Mrs. J. E. Cullum as administratrix of the estate of Allen C. Bancroft, deceased, commenced an action in the same court to recover upon the policy dated July 24, 1922. These suits were removed to the court below by the defendant insurance company. At the trial the two suits were consolidated and tried as one case. Plaintiffs had judgment. The insurance company has brought the cases to this court for review. In each of the policies the insurance company agreed to pay immediately on receipt of due proof of the death of the insured during the continuance of the contract. The policy dated February 23, 1922, lapsed October 22, 1923, through the failure to pay the premium theretofore due; the policy dated July 24, 1922, lapsed for the same reason on March 24, 1924. It is alleged in both complaints that Allen C. Bancroft died on the 11th day of August, 1923. It is then set out in some detail that on that day the insured disappeared from his home in the city of Tulsa, state of Oklahoma, and was

never thereafter heard from. It is alleged that plaintiffs furnished the defendant with due proof of the death of the insured Allen C. Bancroft by evidence of his disappearance and his absence from his home unheard from for seven years. In its answer to each complaint the defendant denied the insured died on August 11, 1923; denied that the policy sued upon was in force and effect at the time the alleged cause of action accrued; denied that plaintiffs furnished proof of death within a reasonable time after the alleged death of the insured, and alleged plaintiffs for that reason were estopped to maintain the action; alleged that the action was barred by the provisions of section 185 Compiled Oklahoma Statutes for 1921. When plaintiffs rested, the defendant demurred to the evidence on the ground that it was insufficient to sustain the cause of action alleged in the complaint in each of the cases on trial. The demurrer was overruled and exception taken. The defendant thereupon rested without the introduction of testimony and moved the court to direct the jury to return a verdict in each case in favor of the defendant and against the plaintiffs. No grounds for this motion are stated in the record. The motion for a directed verdict in each case was overruled by the court and exception taken.

In addition to the two rulings of the trial court above noted two other rulings made during the course of the trial are brought up for review. The two latter relate to the admission in evidence of certain written documents hereinafter referred to. Objections and exceptions were duly made and taken at the time.

■■ As above stated the answer of appellant in each of the cases contains a plea of estoppel and a plea of the statute of limitations. These will now be disposed of. Appellant's brief contains no argument in support of the plea of estoppel and the plea for that reason will be given no consideration. In support of the plea of the statute of limitations appellant has cited Harrison v. Masonic Mutual Benefit Society, 59 Kan. 29, 51 P. 893, and Kauz v. Great Council, I. O. R. M., 13 Mo. App. 341. The reasoning of these cases is not convincing. The sounder view and better reasoning are, we believe, found in Benjamin v. District Grand Lodge, No. 4, I. O. B'nai B'rith, 171 Cal. 260, 152 P. 731, 732. The court in that case said: "The cause of action, according to respondent's theory, did not arise upon the death of Benjamin, but when evidence of his death was furnished, and plaintiff had no satisfactory evidence of the fact of death to present to the defendant until after the lapse of seven years from the disappearance of the insured. We see no logical escape from this reasoning. * * * Having established that fact by the presumptive force of the passage of the requisite time, it became necessary to determine whether the death of Mr. Benjamin occurred before or after the date of the cancellation of his certificate for non-payment of dues. The jurors were instructed, in effect, that unless the plaintiff had established the fact of Benjamin's death occurring prior to the date of the forfeiture of the rights asserted under the terms of the certificate, their verdict should be in favor of the defendant. They were also informed that the establishment of death by the presumption upon which plaintiff depended did not fix the time of death at any particular moment of the seven years, but only established the fact of death at some time during that period. These instructions gave to the jurors the proper issues upon which to found their verdict."

The Supreme Court of California in that case denied the contention now made by appellant upon the authority of the case cited from the Supreme Court of Kansas in respect to which the California court said: "With all due regard for the learned Supreme Court of Kansas, we are unable to agree with the conclusions reached in the cited case." We think the California court was right.

■■■ The evidence in the case disclosed that on August 11, 1923, the insured was taken by his brother-in-law from his home in Tulsa, Okl., to the railroad station in that city for the ostensible purpose of making a business trip to the state of Missouri; that the insured was never seen again by any one after his separation at the station from his brother-in-law. After the end of seven years from the date of his disappearance, the beneficiaries made proof of death by setting up such disappearance and absence unheard from for the period of seven years, and commenced these actions to recover upon said policies. It is the contention of appellees that the insured committed suicide on August 11, 1923, the day of his disappearance, probably by plunging into the quicksands of the Arkansas river.

The evidence discloses that at the time the policies were written the insured was a contractor engaged in bridge construction. About two years before he disappeared his wife had died leaving the two children above named. At the time of his disappearance Al-

leen the elder was nine years old and Alice four. After the death of his wife he became despondent and morose in his association with friends and acquaintances; his mind seemed to be affected; he became involved in a business way; his home was heavily mortgaged and at the time of his disappearance he was having difficulty in meeting his current bills; however it was the opinion of his bookkeeper that had he remained and given personal attention to his affairs he would have been able to carry on and meet his obligations. While despondent and morose in his association with friends and acquaintances it was noted that he became, after the death of his wife, more devoted to his children; he converted a room of his home into a business office apparently for the purpose of being with his children and having them under his immediate oversight; he personally attended their wants. After his disappearance two writings signed by him, in his handwriting except the letterheads, under date of August 4th, were found in his desk at his home. These writings were as follows:

"A. C. Bancroft   Phone Osage 9788

"Contractor

"Address P. O. Box 210

"Metal and Concrete Bridges and Concrete Pavement

."Rooms 211–212 Lorton Building

"A. C. Bancroft

"P. S. Stover   Tulsa, Okla., Aug. 4th, 1923.

"I would like if possible for Dr. and Mrs. J. E. Cullum to take charge of the girls Alleen and Alice and also any money that may come to the girls, said money to be used to care for and educate them also they (the Cullums) and the girls to have the furniture and everything in the house pertaining to the home. P. S. Stover my bookkeeper knows more about my business affairs than any one else so would like for him to settle same if possible. Resp. A. C. Bancroft. This is the only way I see to keep from dragging my babies through a life of poverty and want."

"A. C. Bancroft        Phone Osage 9788

"Contractor

"Metal and Concrete Bridges and Concrete Pavement.

"Address P. O. Box 210 Rooms 211–212 Lorton Building

"A. C. Bancroft   Tulsa, Okla., Aug. 4, 1923.

"P. S. Stover

"Statement of facts in regard to property held in name of Dan W. Patton Trustee.

The property is located at Eleventh and M. K. T. Railroad.

"This property is bought and paid for from money earned by A. C. Bancroft in the building of bridges in Tulsa County. Mr. Patton and Mr. Wooden to have (⅓) one-third interest each for giving me the work. I also gave them $1000.00 in cash. Mr. Patton has kept the books on this property in his office in County engineer's office some of the payments were made out of rent money collected from the property by myself or Mr. Patton. This statement I swear to before my maker and God. A. C. Bancroft."

The introduction of these writings in evidence was objected to and exception taken on the ground that each of them was incompetent, irrelevant, immaterial, ex parte, self-serving declarations.

In passing upon these sweeping objections it is proper to keep in mind the evidence concerning the embarrassed financial condition of the insured at the time he indited the writings objected to. With that in mind it is at least a permissible inference that when he wrote "and also any money that may come to the girls" found in the first writing, he had in mind his life insurance in litigation in these actions. As already said it is the contention of appellees that Bancroft committed suicide on August 11, 1923, the day of his disappearance, and it is suggested by appellees in their brief that in all probability the insured went directly from the railroad station to the Arkansas river, about a mile distant, and detroyed himself by plunging into some of the numerous beds of quicksand which are known to exist in the bed of the stream in this neighborhood. As tending to support the probability of this suggestion the evidence shows that immediately after his disappearance an extensive search was made for him; the appellant was notified of his disappearance and furnished with his photograph; presumably it joined in the search through its far-flung and efficient organization; a lawyer was employed; the help of the Elks Lodge enlisted; inquiry made through newspapers and relatives—all without a trace. The fact of such an extensive and intensive search for a man as well known as the insured without revealing a single trace of him, certainly tended to show not only that he had destroyed himself but that he had done it quickly and in some manner which by its nature would leave no trace. Any evidence tending to support or contradict the contention that he committed suicide at the time or in the manner suggested by appellees, or

otherwise, was in reason and under the authorities competent.

In Mutual Life Insurance Co. v. Hillmon, 145 U. S. 285, 12 S. Ct. 909, 912, 36 L. Ed. 706, the Supreme Court of the United States in discussing the question now under consideration said: "The existence of a particular intention in a certain person at a certain time being a material fact to be proved, evidence that he expressed that intention at that time is as direct evidence of the fact as his own testimony that he then had that intention would be."

The writings were admissible.

■■ Finally: Was the evidence sufficient to take the case to the jury?

Judge Walter H. Sanborn in Northwestern Mut. Life Ins. Co. v. Stevens (C. C. A.) 71 F. 258, page 261, finely compressed in a few words the considerations to be taken into account in answering this question:

"Two cases of disappearance in which the facts are exactly alike will probably never arise, and the strength of the presumption of life or death will never be the same in any two cases. The facts and circumstances surrounding each disappearance which tend to affect the inference of continued life or early death that the minds of reasonable men, anxious only to arrive at the truth, would draw, should be received in evidence in the trial of these cases; and then, guided by the established presumption that one who disappears under ordinary circumstances is presumed to live for seven years thereafter, the fact of continued life or previous death at the important date should be determined by the jury if there is sufficient evidence in the case to warrant a finding that the established presumption has been varied, and by the court if there is no such evidence. * * * The established presumption of fact from the disappearance of an individual under ordinary circumstances, from whom his relatives and acquaintances have never afterwards heard, is that he continues to live for seven years after his disappearance. If this presumption was unaffected by countervailing facts, it would continue in the case at bar until August 22, 1899; but this presumption of fact is not conclusive. It may be overcome, not only when the testimony of those who saw the insured die or saw his body after his death is produced, or when he was last seen in a peril that might probably cause his death, but also when all the facts and circumstances of the case—the possible motives, if any, of the lost one to absent and conceal himself in view of approaching failure, disgrace, or punishment, his possible motives, if any, for returning to his family and occupation, his attachments to the members of his family and his friends, his interest and prospects in his business or occupation, and the extent of the unavailing search that has been made for him—are such that they would take the case out of the category of an ordinary disappearance, and would lead the unprejudiced minds of reasonable men, exercising their best judgment, guided by the established rule that life is presumed to continue seven years after an unexplained disappearance, to the conviction that death had intervened at an earlier date."

The rule is that a case is one for the jury if upon all the evidence fair-minded men might honestly reach different conclusions with respect to the matter in issue. Payne v. Haubert (C. C. A.) 277 F. 646.

Frankly, the writer of this opinion had grave doubts as to the correctness of the rulings submitting the case to the jury. His associates, and the trial judge as well, were of opinion on the evidence that the insured took his own life on or about the day of his disappearance. To paraphrase the language of Judge Sanborn in the Stevens Case, supra, if the evidence in this case led the unprejudiced minds of three reasonable men, exercising their best judgment, guided by the established rule that life is presumed to continue seven years after an unexplained disappearance, to the conviction that death had intervened on or shortly after August 11, 1923, the writer felt and still feels that he should, under the rule above stated, defer to their conclusions.

Judge Cotteral [1] in his later conference memorandum wrote:

"I think the case of Northwestern Mutual Life Ins. Co. v. Stevens (C. C. A.) 71 F. 258, is illuminative. It deals with the case of Davie v. Briggs, 97 U. S. 628, 24 L. Ed. 1086, on page 262 of 71 F., and holds that the imminent peril doctrine is not always necessary. It would suffice, but it is not essential.

"The case of United States v. Hayman (C. C. A.) 62 F.(2d) 118, is also valuable for a grouping of citations, and it deals with Davie v. Briggs, and it seems the rule in that case was held not to be exclusive in Fidelity Mutual Life Ass'n v. Mettler, 185 U. S. 308, 22 S. Ct. 662, 46 L. Ed. 922. In that case it was declared that the inference of death might arise from disappearance inconsistent with the continuance of life, even if no exposure to particular peril is shown.

"I am now inclined to believe, as Judge

---

[1] Judge Cotteral died April 22, 1933, and did not see the final draft of this opinion.

McDermott suggests, the notes in referring to the care of the children necessarily meant the insured intended to commit suicide and they would have the benefit of the insurance. So upon re-examination of the case I have concluded to vote for affirmance on the theory that the death of the insured was established by sufficient evidence."

Judge McDermott in his conference memorandum wrote:

"I am in entire accord with the law as stated by appellant in its brief as to the necessity of distinct proof of death prior to the lapse of the policies. But I am quite as well satisfied that here is evidence from which a jury of rational men could come to the conclusion that Bancroft in fact took his life immediately after his disappearance. A reading of this record convinces me that he deliberately made up his mind to kill himself, at the first opportune time, for the purpose of collecting the insurance; and that he did this in order to provide for his children. The jury has the same right to draw that inference from the evidence as does a judge.

"I think there was sufficient evidence; the court fairly submitted the question to an impartial jury and I think the case ought to be affirmed. * * * United States v. Hayman (C. C. A.) 62 F.(2d) 118."

In addition to the cases already cited or referred to, any one wishing to pursue the inquiry further will find the following cases (there are many others) illuminating and instructive: Continental Life Ins. Co. v. Searing (C. C. A.) 240 F. 653; English v. United States (D. C.) 25 F.(2d) 335; Brownlee v. Mutual Ben. Health & Accident Ass'n (C. C. A.) 29 F.(2d) 71; United States v. Robertson (C. C. A.) 44 F.(2d) 317; United States v. O'Brien (C. C. A.) 51 F.(2d) 37; McCune v. United States (C. C. A.) 56 F.(2d) 572; Browne v. New York Life Ins. Co. (C. C. A.) 57 F.(2d) 62.

Finding no error in the record the judgment of the trial court in each of the cases is affirmed.